UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 5:  21-014-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| RANDOLPH A. MORRIS, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Randolph Morris's trial is scheduled to begin on September 17, 2021.  He is charged in Counts 1 through 3 of the Indictment with wire fraud in violation of 18 U.S.C. § 1343.  Each count relates to his failure to report foreign income earned while playing professional basketball in China on Form 740 Kentucky individual income tax returns for tax years 2015 through 2017.  [*See* Record No. 1.]  Counts 4 through 11 of the Indictment charge Morris with violating 26 U.S.C. § 7206(1) by filing false federal income tax returns (IRS Form 1040 and 1040A returns) for tax years 2010 through 2017, all of which also relates to his failure to report foreign income.  [*See id.*]

The parties have filed three motions *in limine*.  [Record Nos. 38, 40, and 44] The United States' *omnibus* motion *in limine* concerns the admission of various business records, as well as several other matters.  [Record No. 38] Morris's first motion *in limine* seeks the admission of various emails between the defendant and other individuals.  [Record No. 40] His second motion *in limine* requests exclusion of his 2010-2014 Form 740 Kentucky individual income tax returns.  Morris asserts that these documents constitute inadmissible character evidence.

- 1 -

As set forth below, the United States' motion will be granted, subject to one qualification.  The defendant's first motion *in limine* will be denied, in part, with the Court reserving judgment on the balance of the motion.  The defendant's second motion *in limine* will be denied.

## I.  The United States' *Omnibus* Motion *in Limine*

### A.  Admission of Business Records

The parties reached a stipulation on September 3, 2021, regarding the admissibility of various records under Rule 803(6) of the Federal Rules of Evidence.  [Record No. 36] In addition, the United States seeks to admit the following four groups of documents not subject to the stipulation as business records under Rule 803(6):

> (1) a single-page document created by Morris's accountant during the preparation of his 2010 tax return;
>
> (2) records relating to Morris's life insurance policy from the Motorists Insurance Group;
>
> (3) records from the H&R Block Tax Group related to the preparation and filing of Morris's 2011 and 2012 tax returns; and
>
> (4) records maintained by H&R Block Digital LLC related to tax software for preparers and general taxpayers.

[Record No. 38, p. 3] It indicates that all of the subject documents were provided to the defendant during discovery.  [*Id.*]  The government has produced Rule 902(11) certifications in connection with these records for self-authentication purposes.  [Record Nos.  38-2, 38-3, 38-4, and 38-6]

Business records are admissible under the Rule 803(6) exception to the hearsay rule if:

> (1) the records were "created in the course of a regularly conducted business activity;" (2) the records were "kept in the regular course of that business;" (3) the records resulted from a "regular practice of that business" to create such documents; and (4) the records were "created by a person with knowledge of the transaction or from information transmitted by a person with knowledge."

*United States v. Ramer*, 883 F.3d 659, 677-78 (6th Cir. 2018) (quoting *Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC*, 774 F.3d 1065, 1071-72 (6th Cir. 2014)); *see also* Fed. R. Evid. 803(6)(A)-(C).  "[T]hese conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification." Fed. R. Evid. 803(6)(D).  "Once these conditions have been shown to be satisfied, another party may challenge the veracity of the business records by showing 'that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.'" *Ramer*, 883 F.3d at 678 (quoting Fed. R. Evid. 803(6)(E)).

A "domestic record that meets the requirements of Rule 803(6)(A)-(C)" certified by "the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court" is self-authenticating and "require[s] no extrinsic evidence of authenticity." Fed. R. Evid. 902(11).  "Before the trial or hearing, the proponent must give an adverse party reasonable written notice of the intent to offer the record – and must make the record and certification available for inspection – so that the party has a fair opportunity to challenge them." *Id.*

The first record the United States seeks to admit is a printed online news article captioned "Former Wildcat Randolph Morris Shines in Beijing Debut".  This document bears the following handwritten note: "Per Randolph – he did not receive any foreign income untill [sic] 2011 . . . MLA 8/18/11 11:00 am".  [Record No. 38-1] The news article was published on December 12, 2010, but ostensibly printed on August 18, 2011, according to the URL line at the bottom of the printed page.  [*Id.*]

The United States explains that certified public accountant ("CPA") "M.A." (Miranda Aavatsmark) of the Lexington accounting firm Switzer, McGaughey & King, PSC ("Switzer") located the article online while preparing Morris's tax year 2010 federal and state tax returns on August 18, 2011.  [Record No. 38, p. 5] According to the government, Morris had not told Aavatsmark about any 2010 professional basketball earnings in China, and she called him to ask about the article.  [*Id.*]  Aavatsmark's notation on the printed news article reflects that he stated during their phone call that he had not received foreign income until 2011.  [Record No. 38-1] The United States asserts that "Morris did not return to Switzer, McGaughey, & King for assistance with his subsequent year tax returns."  [Record No. 38, p. 5]  It has produced the certification of Daniel A. King, CPA, a "records custodian/employee" at Switzer, which attests to the Rule 803(6)(A)-(C) compliance of the "notes made from conversation with client" and itself demonstrates compliance with Rule 902(11).  [Record No. 38-2]

In addition to the note's compliance with Rule 803(6), the United States contends Morris's handwritten notation is not hearsay insofar as it is not being offered to prove the truth of the matter asserted by Morris according to the note, *i.e.*, that he did not receive foreign income until 2011, but rather to demonstrate the *falsity* of this statement.  [Record No. 38, p. 6]  And to the extent Morris objects that the notation is being offered to demonstrate that he provided Aavatsmark the explanation she recorded, the United States argues that the notation is an opposing party statement and not hearsay under Rule 801(d)(2) of the Federal Rules of Evidence.  [*Id.* at pp. 6-7.]  The United States also argues that the mere presence of the handwritten note on the printed article does not preclude admission as a business record.  [*Id.* at p. 6.]

Morris argues that the government's point about proving the falsity of his statement to Aavatsmark goes to the truth of the matter asserted. [Record No. 48, p. 3] He also contends that King's certification is suspect because King instructed Aavatsmark how to document her conversation with the defendant and because investigators obtained the article and accompanying note from another employee of Switzer, Jenny L. Morrison. [*Id.* at 4 n. 1.] Morris suggests that the document fails to meet the business records exception because it is not a memorandum and it cannot be said to have been "maintained in the regular course of business or a regular practice of the firm" due to its uniqueness. [*Id.* at 5.]

The United States' arguments regarding the admissibility of this document are persuasive for several reasons. First, King certified under penalty of perjury that, *inter alia*, he is a records custodian, he is "familiar with how the records were created managed stored and retrieved," and "[i]t is the regular practice of the business to make and maintain such records." [Record No. 38-2] As indicated above, the certification meets the requirements of Rule 902(11) and indicates Rule 803(6)(A)-(C) compliance.

Additionally, Morris is charged in Count 4 with filing a false IRS Form 1040 federal income tax return for tax year 2010 because he allegedly did not report foreign income on that return. [*See* Record No. 1.] Thus, if the substance of what Morris purportedly said is at issue, his remark to Aavatsmark about the lack of 2010 foreign income would be false. It would not be offered to prove the truth of the matter asserted and would not be hearsay. *See* Fed. R. Evid. 801(c)(2); *United States v. Hathaway*, 798 F.2d 902, 905 (6th Cir. 1986) (concluding that "statements offered to prove the falsity of the matter asserted are not hearsay."). If the statement is offered to prove, as Aavatsmark recorded, that Morris made this statement, then it would be an opposing party statement under Rule 801(d)(2)(A). It could potentially be

offered to demonstrate: (1) Morris's intent to lie about his foreign income when asked by his accountant; and/or (2) Morris's reason for ending his professional relationship with Switzer, *i.e.*, a decision to cease using the firm's services after inquiry into foreign earnings that prompted him to lie.

Further, the presence of the handwritten note on the article does not place it outside the ambit of the business records exception. As the United States notes [Record No. 38, p. 7], the United States Court of Appeals for the Eighth Circuit has found the written notes of an accountant concerning the non-hearsay statements of another during meetings to fall within the business records exception where: it was the practice of the accountant to take such notes; the notes were initialed and dated; the accountant was acting in his capacity as "accountant and consultant" for his client and "had duties to his client . . . that would motivate him to make accurate notes and file them properly"; and "the notes were located in the appropriate file in his office." *Hoselton v. Metz Baking Co.*, 48 F.3d 1056, 1061 (8th Cir. 1995). This demonstrates that it is not so unique or unusual for accountants to take notes relevant to their clients that such notes necessarily fail to meet the business records exception.

Between the substance of the note itself and the Rule 902(11) certification, the circumstances of *Hoselton* would attain to the document at issue. And contrary to Morris's assertions, the document bears no hallmarks of untrustworthiness. Indeed, the computer-generated date in the URL line of the printed article is the same date as that written by Aavatsmark in the note itself: August 18, 2011. This evidences that Aavatsmark printed the article on that date, called Morris, and recorded his response in an initialed and dated note for the firm's records. Morris has not demonstrated a lack of trustworthiness, and the article bearing Aavatsmark's note will be admitted.

Next, the United States seeks to introduce records relating to Morris's Motorists Insurance Group whole life insurance policy, including a January 28, 2014 life insurance application completed in handwriting, a January 28, 2014 "Confidential Financial Questionnaire Application Supplement" also completed in handwriting, and an undated chart depicting, *inter alia*, the policy's premiums and benefits for prospective years. [*See* Record Nos. 38, p. 7 and 48-1.]   The United States has produced a Rule 902(11) certification of Camille D. Craig, a "records custodian/employee at Motorists Life" indicating the compliance of the "policy file" with Rule 803(6). [Record No. 38-3]

The United States reiterates the same argument outlined above that the "presence of handwritten notes does not preclude a document from being considered [and admitted as] a business record." [*Id.* at p. 8.]  It also asserts that the documents "are relevant for showing that what Morris reported about his income to his life insurance company differed from what he reported during the same period to the IRS and the Kentucky Department of Revenue." [*Id.*]

Morris opposes the admission of these records on relevance grounds and suggests that their probative value is outweighed by the risk of unfair prejudice because they may involve different disclosures than those made on tax returns and they only pertain to income earned in tax years 2012 and 2013.  [*See* Record No. 48, p. 6.]  He also claims that the evidence is cumulative inasmuch as the government will already introduce Morris's contracts with the Beijing Shougang Club, documenting his income during these years.  [*Id.* at pp. 6-7.]  He questions the documents' authenticity because they are handwritten with no indication of "guidance or advice provided in the completion of this application [that] could have resulted in errors with the income reported and the assets listed." [*Id.* at p. 7.]

The self-authenticating attestation of Craig indicates that these records meet the business records exception.  And there appear to be no handwritten markings apart from information written on the application and supplement by Morris and the signature of a witness.  For the reasons stated above regarding the note on the printed news article, the Court finds no bar to admissibility based on hearsay grounds.  There is also no substantive indication of anything untrustworthy about the documents in question, including those that are handwritten.

Further, "[e]vidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action."  Fed. R. Evid. 401.  The evidence appears to indicate that Morris reported to the insurance company that he earned $1,250,000.00 in his 2012 and 2013 "Salary or Wages" and applied for a policy with $2,000,000 in benefits, the need for which was based on "Two Years Income" according to the supplement to the application.  [*See* Record No. 48-1.]  The records also indicate that his employer was "Beijing Shougang Co."  [*Id.*]  These records would be relevant if they do, in fact, show that the foreign income reported to the insurance company and the correlating policy document higher levels of income than those reported to, at least, the IRS for tax years 2012 and 2013 inasmuch as Counts 6 and 7 involve false federal tax return charges pertaining to those years.  [*See* Record No. 1]  And Morris's IRS Form 1040 income tax return for tax years 2012 and 2013 demonstrate that he reported no foreign wages or salaries those years.

The records are relevant and not cumulative because they evidence discrepancies in Morris's *reporting* of income to a third-party entity and the IRS, unlike Morris's contracts. The records are highly relevant to Counts 6 and 7 and do not risk unfairly prejudicing Morris

on other counts.  Additionally, Morris provides no legal or factual basis for his suggestion that income disclosures on life insurance applications might materially differ from those on federal tax returns.  Thus, the probative value is not substantially outweighed by the danger of unfair prejudice.  *See* Fed. R. Evid. 403.   The records will be admitted.

The third group of records are 2011 and 2012 H&R Block Tax Group records that are duplicates "of the same tax returns the government will introduce through an IRS official tax record custodian" except that they contain a 2011 and a 2012 IRS Form 8879 through which Morris authorized H&R Block to sign his returns electronically and acknowledged them to be "true, correct and complete."  [Record No. 38, p. 9] The 2011 IRS Form 8879 also bears the notation "No W2 Income" in handwriting in the top margin.  [*See id.*]  Morris objects to the admission of these records based on the existence of the handwritten note.  [Record No. 48, pp. 7-8] However, the United States contends, for the reasons stated above, that they should be admitted under the business records exception.  [*See id.*]  It has produced a Rule 902(11) business records certification of Barbara L. Schwartz, Custodian of Records for H&R Block Tax Group Inc.  [Record No. 38-4] The United States further explains:

> The tax preparers working with Morris at the two respective [H&R Block] offices kept copies of Morris's tax returns, which were subsequently turned over to the H&R Block corporate headquarters. Those records were produced to the government along with a records certification that was signed by an H&R Block custodian of records on August 15, 2018.

[Record No. 38, p. 8]

Morris does not object to admission of the 2012 IRS Form 8879, which does not contain the handwritten notation.  Still, the certification is sufficient to admit both the 2011 and 2012 records under Rules 803(6) and 902(11), absent any further indication of untrustworthiness.  As is the case regarding the notation by Aavatsmark, there does not appear to be anything

unusual or untrustworthy about the notation in the margin of the accounting firm's record pertaining to its client. Accordingly, these records will be admitted.

The fourth and final group of records the United States seeks to admit are records maintained by H&R Block Digital LLC related to tax software for preparers and taxpayers. One such record is a screenshot printout of a tax software program used by H&R Block tax preparers "in and around 2011," which provided guidance regarding clients' foreign income and a means of recording such income. [Record Nos. 38 and 38-5] Another such record is a screenshot printout of a 2017 version of the H&R Block online program which asked users about foreign income. The United States asserts that Morris personally "utilized an H&R Block online tax program to complete his taxes" between 2013 and 2017. [Record No. 38, p. 9] The government has produced a Rule 902(11) certification from Barbara L. Schwartz relating to these proposed exhibits. [Record No. 38-6]

The government cites *United States v. Salgado*, 250 F.3d 438 (6th Cir. 2001), a case in which the United States Court of Appeals for the Sixth Circuit concluded that "[a] computer printout is admissible under Rule 803(6) as a business record if the offeror establishes a sufficient foundation in the record for its introduction." *Id.* at 452. It also cites *United States v. Hassan*, 742 F.3d 104, 133 (4th Cir. 2014), a case in which Facebook page screenshots were certified pursuant to Rule 902(11) by a Facebook custodian of records and admitted under Rule 803(6). Thus, such printouts may be admitted in the manner proposed by the government.

Morris objects that the 2017 software program printout risks an assumption by the jury that he used the software when preparing his own taxes every year from 2013 through 2017. [Record No. 48, p. 8] He also argues that the jury might speculate from the 2011 tax preparer

printout that H&R Block tax preparers asked him about foreign income when the printout does not demonstrate that they did so.  [*Id.* at pp. 8-9.]

Morris has not offered any compelling argument to challenge admission of the printouts.  The 2017 printout is pertinent to, at least, Counts 3 and 11, the two counts concerning Morris's state and federal tax returns for that year.  [*See* Record No. 1.]  No unfair speculation will result if the printout is specified as a printout for the program in use in 2017.  Additionally, the 2011 printout is evidence that H&R Block tax preparers had guidance to inquire about foreign income when they prepared Morris's taxes in, at least, 2011.  The Court finds that these records have been authenticated, and they will be admitted pursuant to Rule 803(6).

### B.  Other Matters Raised in the Government's *Omnibus* Motion *in Limine*

The United States also moves to preclude the defendant from eliciting testimony, offering evidence, and making arguments on three discreet topics during trial.  [Record No. 38, pp. 10-12] First, it seeks to preclude self-serving hearsay statements, including emails, letters, or text messages, of declarants, particularly the defendant himself.  [*Id.* at p. 10.]  In response, the defendant references the arguments made in his first motion *in limine*.  [Record No. 48, pp. 9-10] Subject to examples meeting exceptions to the rule against hearsay and other considerations relating to the defendant's first motion *in limine*, discussed below, the government's request will be granted.  *See* Fed. R. Evid. 802.

Second, the United States seeks to preclude Morris from referencing potential punishment at trial.  [*Id.* at pp. 10-11.]  "Information regarding the consequences of a verdict is . . .  irrelevant to the jury's task" and can distract and confuse jurors.  *Shannon v. United States*, 512 U.S. 573, 579 (1994).  Morris acknowledges that the discussion of potential

punishment or collateral consequences of a conviction is inappropriate.  [Record No. 48, p. 10] Accordingly, the defendant will be precluded from making such references.  *See* Fed. R. Evid. 402 and 403.

Third, the United States seeks to preclude reference to and evidence concerning the Department of Justice's prosecutorial policy on state tax-related wire fraud charges as well as prosecutorial motive, arguing that these matters are not relevant to the charges against the defendant.  [Record No. 38, pp. 11-12] It also contends that even if these issues were relevant, they would risk undue prejudice by appealing to sentiments of sympathy and jury nullification. [*Id.* at p. 12.]

These issues pertain to arguments raised by Morris in connection with his earlier motion to dismiss Counts 1 through 3 of the Indictment, which was denied on August 27, 2021.  [*See* Record Nos. 20-1, 32, and 34.]  The specific Department of Justice policy in question is that found in Tax Division Directive No. 128: "Absent unusual circumstances . . . the Tax Division will not approve mail or wire fraud charges in cases involving only one person's tax liability . . . ."  The United States Department of Justice Archives, Tax Division Directive No. 128, https://www.justice.gov/archives/usam/tax-resource-manual-14-tax-division-directive-no-128 (last accessed September 16, 2021).

Morris asserts that he "intends to question government witnesses on [Department of Justice policy] to educate the jury on alternative options which the government could have taken to resolve the issues and how such issues are typically handled within DOJ."  [Record No. 48, p. 10] This does not, in Morris's estimation, insinuate prosecutorial misconduct or selective prosecution.  [*Id.* at pp. 10-11.]

The defendant has not demonstrated how the policy could be raised at trial without implicating selective prosecution.  The Sixth Circuit has held that "the defense of selective prosecution is a matter that is independent of a defendant's guilt or innocence, so it is not a matter for the jury." *United States v. Abboud*, 438 F.3d 554, 579 (6th Cir. 2006).  And more generally, "[c]ourts have consistently excluded evidence and argument by defendants seeking to attack the prosecution's motives in initiating prosecution." *United States v. Cleveland*, No. 96-cr-207, 1997 WL 253124, at *2 (E.D. La. May 14, 1997) (collecting cases).  Such arguments and evidence are not relevant to the jury's task, and even if they were, their probative value would be substantially outweighed by the risk of unfair prejudice and confusion of the issues at trial.  Accordingly, offers of evidence and/or arguments relating to the Department of Justice's prosecutorial policy or prosecutorial motive will not be permitted during trial.  *See* Fed. R. Evid. 402, 403.

## II.  Morris's First Motion *in Limine*

Morris's first motion *in limine* seeks admission of 4 broad groups of proposed exhibit email chains between him and certain other individuals:

(1) 2010 and 2011 emails with his sports agent, Wallace Prather;

(2) 2009, 2010, and 2011 emails with an accountant he engaged prior to the filing of his tax year 2010 tax returns, Barry Swartz of Swartz Financial Management, and Swartz's associate, Kim Sampson;[1]

(3) 2010 emails with his real estate agent, Elizabeth Traugott; and

(4) 2010 and 2011 emails with his father, Ralph Morris.

---

[1]  The emails between Morris and Swartz Financial Management personnel are divided into two separate attachments to the defendant's motion.  [Record Nos. 40-2 and 40-3]

[Record Nos. 40-1, 40-2, 40-3, 40-4, and 40-5] The defendant contends that these batches of emails are relevant, can be authenticated, and are either not hearsay or fall within an exception to the rule against hearsay.  [Record No. 40, pp. 6-12]

Morris specifically argues that the emails are relevant because they demonstrate his lack of the requisite intent to commit the crimes charged.  [*Id.* at p. 6.]  Morris contends that the emails can be authenticated without the sender or receiver of the email testifying to their authenticity.  [*Id.* at pp. 6-8.]  Morris asserts that the emails are substantively admissible, inasmuch as they are not offered to prove the truth of the matter asserted but rather the effect on the listener (Morris), *i.e.*, "the advice provided to Mr. Morris, his understanding of such advice, and the actions taken relevant to the advice provided."  [*Id.* at p. 9.]  Morris also argues that, insofar as any emails are offered to prove the truth of the matter asserted, they are exceptions to the rule against hearsay because they demonstrate the declarant's "then-existing state of mind (such as motive, intent, or plan)" under Rule 803(3).  [*Id.* at pp. 10-12.]

Morris's arguments concerning the admissibility of the emails are monolithic and not particularized to the individual emails contained in the 50 pages of email chains tendered in connection with his motion.  The United States has provided in its response a helpful four-category classification of the emails, identifying certain problems relating to their admissibility.  [Record No. 45] Category 1 includes emails which the United States believes Morris will be able to authenticate through its own witness, Kim Sampson, based on her experience as an employee of Swartz Financial Management and to which the United States has no further objection.  [*Id.* at pp. 4-5.]  These include proposed defense exhibits: 4 [Record No. 40-2, pp. 2-3]; 8 [*id.* at p. 4]; 9 [Record No. 40-3, p. 1]; 15 [Record No. 40-2, p. 5]; 16 [*id.* at p. 6]; 17 [*id.* at pp. 10-13]; 19 [*id.* at p. 14]; 25 [Record No. 40-3, p. 2]; 26 [Record No. 40-3,

p. 4]; 27 [Record No. 40-2, pp. 15-16]; 28 [Record No. 40-3, p. 3]; 30 [*id.* at p. 5]; and 31 [*id.* at p. 6]. [Record No. 45, p. 4 n. 1]

Category 2 includes emails the United States contends are comprised, in their entirety, irrelevant information and inadmissible hearsay even if a witness could authenticate them. [*Id.* at p. 5.] Category 2 emails include the following proposed defense exhibits: 2 [Record No. 40-2, p. 1], 3 [Record No. 40-1, p. 1], 5 [*id.* at p. 2], 6 [*id.* at p. 3], and 33 [*id.* at pp. 13-16].[2] [Record No. 45, p. 5 n. 2]

Category 3 includes emails the government concedes to be relevant and admissible if authenticated. It objects to their admission "without more information about who, and how, the emails will be properly authenticated." [*Id.* at p. 6.] This category includes proposed defense exhibits: 10 [Record No. 40-4, pp. 1-6]; 11 [*id.* at pp. 7-8]; 13 [Record No. 40-1, p. 5]; 14 [Record No. 40-5, p. 4]; 18 [Record No. 40-1, p. 6]; 20 [*id.* at p. 7]; 21 [*id.* at p. 8]; 22 [*id.* at p. 9]; 23 [*id.* at p. 11]; 24 [*id.* at p. 12]; and 32 [*id.* at p. 12]. [Record No. 45, p. 6, n. 3]

Category 4 includes proposed defense exhibits the government believes to contain emails with some relevant and admissible information if authenticated but other information that would need to be redacted due to hearsay and irrelevant "miscellaneous conversations not pertaining to taxes." [*Id.* at p. 6.] Included in Category 4 are proposed defense exhibits 7 [Record No. 40-5, pp. 1-3] and 12 [Record No. 40-1, p. 4]. [Record No. 44, p. 6 n. 4]

---

[2]  Proposed exhibit 33 includes a September 24, 2018 email from Prather to Morris with an addendum to a contract between the defendant and Guangdong Winnerway Basketball Club Co., Ltd dated September 9, 2018. [Record 40-1, pp. 13-16]  The defendant stated during a September 16, 2021 motions hearing that he intended to substitute a different exhibit with the contract itself, which was entered into in June of 2018.  The United States did not object to the substitution but maintained its objection that the exhibit, as substituted, would be irrelevant and inadmissible hearsay.  As set forth herein, the Court agrees with the United States because the substituted exhibit relates to matters outside the issues charged.

It should be noted that the United States generally agrees with Morris's legal arguments, those being that evidence concerning the defendant's mental state is relevant, the emails can be authenticated by individuals other than their senders and recipients, and emails may be offered to prove the "effect on the listener or to show why the listener acted in the manner in which he did." [Record No. 45, pp. 2-3] However, it expressed concern that that these legal points do not neatly fit with the circumstances and content of all emails the defendant seeks to introduce. Having reviewed the emails, the Court concludes that the United States' arguments are well-taken.

First, some of the emails are irrelevant. The wire fraud counts require intent to defraud the Kentucky Department of Revenue by not reporting foreign income. *See*, *e.g.*, *United States v. Daniel*, 329 F.3d 480, 487 (6th Cir. 2003). And the IRS Form 1040 and 1040A false tax return charges have a willfulness *mens rea* involving "an intentional violation of a known legal duty," that being the duty to report foreign income on the returns. *E.g.*, *United States v. Pomponio*, 429 U.S. 10, 12 (1976). Thus, as both parties acknowledge, evidence bearing on the defendant's mental state (his awareness, or lack thereof, of the need to report foreign income on his tax returns) is relevant.

Four of the proposed exhibits (3, 5, 6 and 33, initially and as substituted) identified by the government in Category 2 are emails between Morris and Prather that have no ostensible link to the defendant's mental state regarding his tax obligations in the years relevant to this action. Proposed exhibit 2, which is also in Category 2, appears to be a January 9, 2009, email from Barry Swartz to Morris, which predates the period at issue in this case by more than a year and has no ostensible relationship to the defendant's mental state for the crimes charged. None of these proposed defense exhibits will be admitted. *See* Fed. R. Evid. 402.

Category 4 includes emails between Morris and his father (proposed exhibit 7) and emails between Morris and Prather (proposed exhibit 12).  Both of these proposed exhibits contain relevant evidence as well as irrelevant information pertaining to matters other than Morris's taxes.  The irrelevant portions of these emails will not be admitted.[3]  *See* Fed. R. Evid. 402.

The United States also argues that the emails in Category 2 and the irrelevant portions of emails in Category 4 are inadmissible hearsay.  [Record No. 45, pp. 5-6]   Proposed exhibits 3, 5, and 6 of Category 2 are generalized conversations between Morris and Prather.  [*See* Record No. 40-1, pp. 1-3] Proposed exhibit 33 of Category 2, initially and as substituted, relates to matters after the last charged conduct of the Indictment – Morris's 2017 federal and state tax returns signed April 9, 2018.  [*See* Record No. 1.]  As described above, proposed exhibit 2 of Category 2 appears to be an email from Barry Swartz to Morris predating the period in question.  [Record No. 40-2, p. 1]  And as noted, the government objects to portions of Category 4 proposed exhibits 7 [Record No. 40-5, pp. 1-3 (email chain between Morris and Ralph Morris)] and 12 [Record No. 40-1, p. 4 (email chain between Morris and Prather)] which contain emails with no ostensible connection to Morris's taxes.

It is difficult to conceive how these exhibits or portions of exhibits can be offered to prove a relevant effect on the listener or anything other than the truth of the matter asserted. Further, they do not demonstrate Morris's then-existing state of mind as it pertains to his intent

---

[3]  The United States has proposed redacted versions of these exhibits to eliminate the irrelevant material (as well as inadmissible hearsay).  [Record No. 45-2 and 45-4] The redacted versions eliminate the problematic points in these emails, and the defendant may move to admit them, provided they are properly authenticated.

while filing the 2010 through 2017 tax returns at issue. Thus, although the identified proposed exhibits (or portions thereof) will not be admitted on relevance grounds, the Court agrees they also constitute inadmissible hearsay. *See* Fed. R. Evid. 801 and 802.

That leaves authentication. Federal Rule of Evidence 901(a) requires the proponent of an item of evidence to "produce evidence sufficient to support a finding that the item is what the proponent claims it is." This requirement may be satisfied through "the introduction of testimony regarding [the item's] unique characteristics: *i.e.*, the 'appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances.'" *United States v. Bertram*, 259 F. Supp. 3d 638, 640 (E.D. Ky. 2017) (quoting Rule 901(b)(4)).

In *Bertram*, United States District Judge Gregory F. Van Tatenhove discussed factors relevant to proving the unique characteristics of an email as borne out in caselaw. *Id.* at 640-41. They include: an email address with a portion of the name of a party to an email; an email address denoting a party's known employer; the substance of an email containing information that would be known by the purported sender; the substance of an email containing a nickname of the sender; an email's signature block; an email containing a unique pin number; and an email's use of distinct language patterns. *Id.* (citing *United States v. Fluker*, 698 F.3d 988, 998-1000 (7th Cir. 2012)); *United States v. Siddiqui*, 235 F.3d 1318, 1322-23 (11th Cir. 2000); *United States v. Kilpatrick*, No. 10-20403, 2012 WL 3236727 (E.D. Mich. Aug. 7, 2012); *United States v. Safavian*, 435 F. Supp. 2d 36 (D.D.C. 2006)). The Court further concluded that:

> the weight of the case law suggests participation in a particular email is not a prerequisite to authenticating it. The case law on the whole suggests that the key consideration in email authentication is not simply whether the witness on

the stand was a sender or recipient of the email, but whether the testifying witness can speak to the email's unique characteristics, contents, and appearance.

*Id.* at 641.

Some of the emails at issue in *Bertram* were between two defendants, Brian Walters and Bryan Wood, introduced by the government through the testimony of a non-party witness who had never seen the emails, Kris Kaiser. *Id.* The government elicited testimony from Kaiser relating to her own past emails with these defendants, which demonstrated her familiarity with their email addresses and signature characteristics. *Id.* at 642. Thus, when it came time to introduce the emails between the defendants:

> Ms. Kaiser could verify the email addresses of both Defendants as the addresses used by those men based on her prior communication with them. The email addresses themselves contained some identifying information, which Ms. Kaiser was able to explain to the jury. The email address used by Brian Walters, "brian@premierintegrity.com", contains his first name and his workplace. And the email addressed used by Bryan Wood, "kyerdoc11kids@yahoo.com", makes reference to his professional work as an Emergency Medicine physician and the fact that he has eleven children. Further, the emails from Dr. Wood contain an auto-signature, "Bryan S Wood MD", and those emails were also signed "bw." Kaiser testified that she knew Dr. Wood typically signed his emails with those lowercase initials.

*Id.* at 642.

In finding that the government had authenticated the emails through Kaiser's testimony, the Court also noted that neither of the defendants had actually asserted the emails to be inauthentic, with "[d]efense counsel's argument against admissibility of the emails focused solely on the notion that the Government had not satisfied Rule 901's requirements." *Id.* (citing *Midwest Retailers Ass'n, Ltd. v. City of Toledo*, 582 F.Supp.2d 931, 934-35 (N.D. Ohio 2008) for the proposition that this approach is "hyper-technical and abstract[]"). That said, the overarching thrust of *Bertram* is that the witness could authenticate the emails to which she

was not a party due to her "personal history of communicating with the Defendants via email" and her resulting ability to "testify about the various distinctive characteristics of the emails." *Id.* at 643.

Subsequent to *Bertram*, Judge Van Tatenhove presided over another case in which a defendant challenged the authentication of emails. In *United States v. Lundergan*, No. 5:18-cr-00106-GFVT, 2019 WL 4125618 (E.D. Ky. Aug. 29, 2019), the government sought to introduce emails between Defendant Dale Emmons "and others." *Id.* at *1. An FBI agent testified that he had investigated the defendants in the case, reviewed emails received from Emmons in response to a grand jury subpoena, and "identified emails 'sent by Mr. Emmons or associated with the work that he was doing during the [relevant] period,'" including some of those proposed to be admitted as exhibits. *Id.* at *2. The Court found this testimony sufficient to authenticate the emails and specifically noted: "[t]he fact that these emails were sent to and from Mr. Emmons['] email account, the contents of the emails, and the circumstances in which they were discovered all help to establish their authenticity." *Id.*

The United States presumes that Morris will be able to authenticate the proposed exhibits in Category 1, *i.e.*, the emails between the defendant and Swartz or Sampson, although it does not concede authentication. While the Court declines to rule on the authenticity of the Category 1 emails at this time, Morris may endeavor to authenticate them through Sampson's testimony at trial.

Categories 3 and 4 (as well as Category 2, which solely contains irrelevant hearsay) include proposed exhibits with threads of emails between the defendant and Prather, Traugott, and Ralph Morris. Of course, any of these individuals could likely authenticate the emails to which they were a party. But it is not clear at this time whether any other witness who is not

a party to these emails could provide the type of testimony necessary to authenticate them as the witnesses did in *Bertram* and *Lundergan*.[4]

Based on the foregoing, the irrelevant and hearsay evidence contained in the proposed exhibits of Categories 2 and 4 will not be admitted. To the extent Morris's motion seeks the admission of such evidence, the request will be denied. The Court will defer a ruling on the admissibility of the relevant evidence not excluded on hearsay grounds in Categories 1, 3 and 4. Should the defendant seek to introduce such evidence, he must authenticate it consistent with this Memorandum Opinion and Order.

### III.  Morris's Second Motion *in Limine*

In his second motion *in limine*, Morris seeks to exclude his 2010 through 2014 Form 740 Kentucky individual income tax returns as inadmissible character evidence. [Record No. 44] The defendant has tendered an August 31, 2021, letter from the prosecution to defense counsel, which states:

> The United States plans to introduce tax return documents regarding Morris's 2010 through 2014 Kentucky state tax returns. As you know, these Kentucky tax returns - which failed to report Morris's basketball income from China - were not charged in the wire fraud portion of the indictment. The United States' position is that this evidence is "inextricably intertwined" with the conduct charged in the indictment and is thus admissible as *res gestae* or "background" evidence. If, alternatively, the Court finds this state tax return evidence is not *res gestae*, then the United States plans to admit it pursuant to Rule 404(b) to prove intent, plan, and knowledge.

---

[4]  One other issue relating to authentication bears mention. Some of the email chains between Morris and Prather (proposed defense exhibits 20 and 23) appear to contain correspondences with Chinese individuals providing information about the Beijing Shougang Club's handling of Morris's taxes. [Record No. 40-1, pp. 7, 10] While the Court declines to endorse or preclude the introduction of these emails at this juncture, it is notable that the identity of these individuals and their relationship to the defendant's Chinese employer are not clear from the context of the emails.

[Record No. 44-1, p. 2]

Morris's challenge to the introduction of this evidence is two-fold: (1) the 2010 through 2014 tax returns are not background evidence inextricably intertwined with the wire fraud charges stemming from his 2015 through 2017 Form 740 individual income tax returns; and (2) they fail to meet the requirements of Rule 404(b). [*Id.*] The United States has responded, contending that the 2010 through 2014 Form 740 individual income tax returns are *res gestae* evidence arising from the same events as all of the charged conduct, with an emphasis on their relationship to the 2010 through 2014 false federal tax return counts alleged in Counts 4 through 8 of the Indictment. [Record No. 47, pp. 2-3] The United States asserts, in the alternative, that the evidence is proper Rule 404(b) evidence offered to prove intent, plan and knowledge. [*Id.* at pp. 3-5.]

"*Res gestae* evidence, also described as 'background' or 'intrinsic' evidence, is 'an exception' to the Rule 404(b) bar on propensity evidence." *United States v. Gibbs*, 797 F.3d 416, 423 (6th Cir. 2015). (quoting *United States v. Adams*, 722 F.3d 788, 810 (6th Cir. 2013)).

> Proper background evidence has a causal, temporal or spatial connection with the charged offense. Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense.

*United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000).

The 2010 through 2014 Form 740 Kentucky individual income tax returns, at the very least, "complete the story" of the false federal tax return charges contained in Counts 4 through 8 of the Indictment. [*See* Record No. 1.] They are temporally connected with these charges because they are state tax returns for the same tax years as the federal tax returns charged in the Indictment. They arise from the same events as these charged federal offenses: Morris's

preparation of tax returns for the years 2010 through 2014.  Moreover, they are probative of the charged offenses because they demonstrate that Morris did not intend to report his income earned in China on *any* tax return, state or federal, for tax years 2010 through 2014.

Further, the 2010 through 2014 state tax returns are arguably background evidence for the charges concerning the 2015 through 2017 federal and state tax returns.  The 2010 through 2014 returns are not particularly attenuated from the conduct underlying the later tax returns but instead relate to the defendant's state tax return reporting in the years immediately preceding those charged in the wire fraud counts.  Additionally, they complete the story of all tax reporting for the years 2010 through 2017, including the conduct underlying the 2015 through 2017 wire fraud charges.  Morris did not suddenly decide to omit his foreign income on state tax returns for tax years 2015 through 2017.  He consistently failed to report foreign income on federal and state tax returns from 2010 when he first began to play professional basketball in China through the years correlating to the charged conduct.[5]

Even if the 2010 through 2014 state tax returns did not meet the background evidence exception to Rule 404(b), they would be admissible under the rule itself.  Rule 404(b) evidence must be evaluated in a three-step analysis.  *Hardy* 228 F.3d at 750 (citation omitted).  "A party seeking to admit 404(b) evidence must first demonstrate that the other bad acts occurred."  *Id.* "The party must then cite a specific purpose for which the evidence is offered . . . ."  *Id.*  Finally, the Court must evaluate "whether the probative value of the identified purpose outweighs the risk of unfair prejudice."  *Id.*

---

[5]  The government asserts that the statute of limitations prevented it from pursuing wire fraud charges relating to the 2010 through 2014 Form 740 Kentucky individual income tax returns. [Record No. 47, p. 2]

The United States can demonstrate that the other bad acts, *i.e.*, Morris's failure to report his Chinese income on the 2010 through 2014 state tax returns, occurred by introducing the Form 740 Kentucky individual income tax returns for those years.  In addition, the United States has identified at least two proper purposes for the evidence: intent and plan.  *See* Fed. R. Evid. 404(b)(2).

Other acts evidence may be introduced under Rule 404(b) where the government has the affirmative duty to prove that the underlying prohibited act was done with a specific criminal intent.  *United States v. Myers*, 123 F.3d 350, 363 (6th Cir. 1997).  "To determine if evidence of other acts is probative of intent, [the Court] look[s] to whether the evidence relates to conduct that 'is substantially similar and reasonably near in time' to the specific intent offense at issue." *Hardy*, 643 F.3d at 151 (quoting *United States v. Haywood*, 280 F.3d 715, 721 (6th Cir. 2002)).  On this point, the Sixth Circuit has determined that "where evidence of prior bad acts is admitted for the purpose of showing intent, the prior acts need not duplicate exactly the instant charge but need only be sufficiently analogous to support an inference of criminal intent." *United States v. Benton*, 852 F.2d 1456, 1467 (6th Cir. 1988).

As indicated in the discussion of email relevance, the crimes charged are specific intent crimes requiring that the government prove willfulness and intent to defraud.  And the state tax returns filed in close temporal proximity to the 2010 through 2014 federal tax returns charged in Counts 4 through 8 are probative of the defendant's allegedly willful intent to not report his foreign income on any returns during those tax years.  The 2010 through 2014 state tax returns are also probative of the defendant's alleged willfulness and intent to defraud with his representations on the 2015 through 2017 federal and state tax returns as charged in the

other six counts of the Indictment.  The conduct documented in the 2010 through 2014 state tax returns is overwhelmingly similar to that of all counts charged in the Indictment.

Moreover, the government persuasively argues that the 2010 through 2014 state tax returns are a part "of a consistent plan by Morris" to not report his foreign earnings to the Kentucky Department of Revenue and Internal Revenue Service for the years 2010 through 2017.  [Record No. 47, p. 4]   The Court also observes that Morris does not directly contend in his motion that the United States has failed to offer a legitimate purpose for the admission of the tax returns in question.  [*See* Record No. 44, pp. 3-5.]  Thus, the second prong of the three-step analysis is met.

Finally, the probative value is substantial. The 2010 through 2014 state tax returns demonstrate a cohesive course of conduct for the relevant tax years.  While these returns may be somewhat prejudicial to the defendant, that is true of "most evidence sought to be admitted by the government during criminal cases."  *United States v. Tackett*, No. 7: 14–023–DCR, 2015 WL 893489, at *5 (E.D. Ky. Mar. 2, 2015) (emphasizing that the evidence must be unfairly prejudicial to be excluded).  The jury will learn that Morris was not reporting foreign income for tax years 2010 through 2017 when the federal tax returns from those years are introduced at trial.  The same is true for the state tax returns pertaining to tax years 2015 through 2017.  It is not as if the jury will be led to believe that he *was* reporting foreign income to the relevant authorities during those years.  And as the United States indicates [Record No. 47, p. 5], the danger of unfair prejudice to the defendant is low considering the overwhelming

similarity and relationship of the prior acts in question to those charged in the Indictment.  The third-prong of the Rule 404(b) analysis is satisfied.[6]

For these reasons, it appears that the 2010 through 2014 state tax returns are admissible as background evidence or Rule 404(b) evidence.  It is worth noting that Morris raises a brief argument concerning the alleged failure of the government's notice to comply with Rule 404(b)(3)'s procedural requirements for: "(A) reasonable notice that, (B) articulates the permitted purpose and the reasoning that supports the purpose, and (C) provides the notice in writing before trial."  [Record No. 44, p. 3 n. 1]

The Pretrial and Discovery Order entered March 12, 2021, provides that "[s]even (7) calendar days prior to trial is presumed to be reasonable notice by this Court" for the purposes of Rule 404(b).  [Record No. 17] The United States gave notice in writing on August 31, 2021, which was, at the time, two weeks prior to trial.  [Record Nos. 23 and 44-1] Morris does not explain why this notice was too late or otherwise inadequate.  The notice articulates proper purposes of the evidence and offers sufficient reasoning to support those purposes.

Because the 2010 through 2014 Form 740 Kentucky individual income tax returns are admissible as *res gestae* background evidence or Rule 404(b) evidence, the defendant's second motion *in limine* to exclude his 2010 through 2014 Kentucky state tax returns as inadmissible character evidence will be denied.  Further, no cautionary instruction regarding Rule 404(b)

---

[6]  To the extent Morris contends that this evidence should be excluded on Rule 403 grounds [*see* Record No. 44, p. 1], the Court likewise concludes that the probative value is not substantially outweighed by the danger of unfair prejudice.  And needless to say, the 2010 through 2014 state tax returns are relevant to, at least, Morris's alleged intent and plan.  [*See* Record No. 44, p. 1 (Morris briefly citing Rules 401 and 402 as grounds for excluding the 2010 through 2014 state tax returns).]

evidence is warranted because the government can introduce the state tax returns as background evidence.

### IV. Conclusion

In summary, the United States' *omnibus* motion *in limine* [Record No. 38] will be granted. The four groups of records discussed in the motion will be admitted, and Morris will be precluded from offering evidence and argument concerning: punishment; selective prosecution, prosecutorial motive, and the Department of Justice's prosecutorial policy; and, subject to the qualification contained herein, self-serving hearsay statements.

The defendant's first motion *in limine* [Record No. 40] will be denied to the extent it seeks admission of irrelevant inadmissible hearsay statements contained in Categories 2 and 4 as classified by the government. The Court defers ruling on the admissibility of the relevant evidence not excluded under the rule against hearsay contained in Categories 1, 3, and 4. Should the defendant seek to introduce emails classified in those categories, he will need to authenticate them consistent with this opinion.

Finally, the defendant's second motion *in limine* to exclude his 2010 through 2014 Form 740 Kentucky individual income tax returns [Record No. 44] will be denied because those state tax returns are both admissible background evidence or proper Rule 404(b) evidence.

Accordingly, it is hereby

**ORDERED** as follows:

1. The United States' *omnibus* motion *in limine* [Record No. 38] is **GRANTED**, subject to the one qualification regarding self-serving hearsay.

2.  Defendant Randolph Morris's first motion *in limine* [Record No. 40] is **DENIED** to the extent it seeks admission of irrelevant and inadmissible hearsay statements contained in Categories 2 and 4.  The motion is otherwise **DEFERRED** for ruling at trial subject to the defendant's authentication of emails in Categories 1, 3, and 4 that are relevant and not inadmissible under the rule against hearsay.

3.  The defendant's second motion *in limine* [Record No. 44] is **DENIED**.

Dated:  September 16, 2021.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky